**GRINNELL CORPORATION, Plaintiff,**

v.

**LOCAL UNION 854, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO, Defendant.**

No. 93–1034.

United States District Court,
W.D. Tennessee,
Eastern Division.

Aug. 12, 1993.

William Sossaman and Donna E. Ernsting, Allen, Scruggs, Sossaman & Thompson, Memphis, TN, for plaintiff.

Samuel Morris and Barclay M. Roberts, Agee, Allen, Godwin, Morris & Laurenzi, Memphis, TN, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT TO GRINNELL CORPORATION AND DENYING UNION'S MOTION FOR SUMMARY JUDGMENT

TODD, District Judge.

This is a civil action brought by the Plaintiff, Grinnell Corporation (the "Company"), against Local Union 854 (the "Union") under section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185. Grinnell seeks to vacate and set aside an arbitration award rendered under the arbitration clause of the collective bargaining agreement between the parties. The Union has counterclaimed for enforcement of the arbitrator's award, in the present case as well as in future actions. Before the court are cross motions for summary judgment. Both parties have fully responded.

Rule 56 of the Federal Rules of Civil Procedure governs the disposition of motions for summary judgment. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, judgment will be granted to the movant. Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if it is clear that a trial is unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). At this stage, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510.

In this case, the record reveals that there are no genuine issues of material fact. In 1989, the Company, in order to obtain new business which required that each piece of its product be labeled, wanted to subcontract the labeling portion of the work, which was unskilled and repetitive, to non-Union employees. The subcontract was to be with Easter Seal Developmental Services Center, which trained handicapped workers. To this end, the Company entered into an oral agreement with the Union that the work would be subcontracted, provided that, if a layoff became necessary in the plant, the subcontract with Easter Seal would be terminated and Union employees would take over the labeling work. This arrangement was successful for approximately three years.

In 1990, the collective bargaining agreement between the parties was renegotiated, and new language was added to Article IV—Work Jurisdiction. Under the new agreement, Article IV provided:

The work of employees engaged in the plant shall consist of all handling, all fabrication and manufacturing of all materials incident to the business of the Company in the shop and yard.

However, the Company reserves the right to subcontract new products in cases where it is more efficient, timely or more economical to do so.

If the Company is not competitive it reserves the right to subcontract existing work. This includes existing practices (such as, but not limited to, tooling, product labeling, etc.) Prior to finalizing such a decision, the Company will consult with the Union for the purpose of exploring various alternatives which could result in retaining the work at the Henderson plant.

In May, 1992, the Company notified the Union that a layoff of 24 employees was

necessary. The Union insisted that the Company honor the 1989 oral agreement, and terminate the Easter Seal subcontract. The Company refused, contending that Article IV of the 1990 collective bargaining agreement superseded the oral agreement, and authorized the Company to continue the labeling subcontract. The Union filed a grievance, which was submitted to an arbitrator and heard on October 30, 1992. The authority of the arbitrator is set out in the collective bargaining agreement in Article X—Grievance Procedure, Step IV:

The decision of the arbitrator shall be final and binding on both parties, but the arbitrator shall only have jurisdiction and authority to interpret the provisions of this agreement in relation to the question being arbitrated and to supply or determine compliance with the agreement but in no case may he/she add to, subtract from or alter in any way the provisions of this agreement.

The arbitrator issued an opinion on December 8, 1992, sustaining the Union's grievance. This action followed.

The Company contends that the arbitrator exceeded the scope of his authority by basing his decision and award on the 1989 oral agreement rather than on the collective bargaining agreement. The Union maintains that the decision of the arbitrator is based upon his construction and interpretation of the contract, and should be enforced.

■ The Union first argues that there is no case or controversy between the parties, and, therefore, the court lacks subject matter jurisdiction in this action. The Union bases this argument on the fact that the Company has paid to the affected employees all monies due under the arbitration award. This argument has no merit. The arbitration award clearly affects future actions of the Company with regard to subcontracting, and the Union itself has counterclaimed for the enforcement of the award in connection with future actions.

■ For many years, federal law has favored the use of arbitration to resolve labor disputes. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596,

80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Thus, courts are required to "refrain from reviewing the merits of an arbitrator's award." *National Gypsum Co. v. United Steelworkers Local 135*, 793 F.2d 759, 766 (6th Cir.1986). However, the Supreme Court also has made it clear that:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. *See also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

The Sixth Circuit Court of Appeals has held that an arbitrator's award fails to draw its essence from the collective bargaining agreement when 1) an award conflicts with express terms of the agreement; 2) an award imposes additional requirements that are not expressly provided in the agreement; 3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and 4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement. *National Gypsum Co.*, 793 F.2d at 766 (citations omitted). *See also Monroe Auto Equip. Co. v. UAW, Local 878*, 981 F.2d 261, 268 (6th Cir.1992); *Dallas & Mavis Forwarding Co. v. General Drivers, Warehousemen & Helpers, Local 89*, 972 F.2d 129, 134 (6th Cir.1992).

■ In this case, the question decided by the arbitrator was whether certain language contained in Article IV of the 1990 collective bargaining agreement superseded the 1989 oral agreement requiring termination of the Easter Seal subcontract in the event of a layoff. The specific Article IV language is as follows:

If the Company is not competitive it reserves the right to subcontract existing work. This includes existing practices (such as, but not limited to, tooling, product labeling, etc.)

The Company maintained that the reference to product labeling clearly meant the existing Easter Seal subcontract, and thus negated the 1989 oral agreement. The arbitrator construed and interpreted this language, and found that it was ambiguous. He then examined evidence of the parties' intent, and determined that the Article IV provision was not intended to supersede the prior oral agreement.

The Union argues that because the arbitrator interpreted the language of the collective bargaining agreement, his award draws its essence from the contract and must be enforced. The court agrees that the arbitrator construed and interpreted the language in Article IV of the contract. If he had gone no further, the court would not hesitate to enforce the award. However, after determining that the Article IV language was not intended to supersede the prior oral agreement, the arbitrator went on to ascertain and enforce the terms of that oral agreement, and to fashion a remedy for its violation. His award clearly is based on a determination that the Company failed to comply with the 1989 oral agreement. Nowhere in the decision does the arbitrator find that the collective bargaining agreement was violated, or require the Company to comply with any of its terms.

By attempting to enforce the 1989 oral agreement, the arbitrator imposed additional requirements on the Company that were not expressly provided for in the collective bargaining agreement. Therefore, he exceeded the scope of his authority, and the court finds that his award does not draw its essence from the contract. Accordingly, the Grinnell's motion for summary judgment is hereby GRANTED, and the arbitrator's decision and award are set aside. Since Grinnell does not seek a refund of the money paid pursuant to the arbitrator's award, no monetary relief

is granted. The Union's motion for summary judgment is DENIED.

IT IS SO ORDERED.